IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

WESTERN SKY FINANCIAL,
LLC, *et al.*,

    Plaintiffs,

       v.                CIVIL NO.: WDQ-11-1256

MARYLAND COMMISSIONER OF
FINANCIAL REGULATION,

    Defendant.

MEMORANDUM OPINION

Western Sky Financial, LLC, Great Sky Finance, LLC, PayDay Financial, LLC, and Martin A. Webb ("plaintiffs"), sued the Maryland Commissioner of Financial Regulation ("CFR"), for declaratory relief.  For the following reasons, the CFR's motion to dismiss will be granted.

I.    Background[1]

Martin Webb, a member of the Cheyenne River Sioux Tribe who resides on the Cheyenne River Reservation, owns Western Sky Financial, LLC, Great Sky Finance, LLC, and PayDay Financial, LLC, internet-based loan companies.  ECF No. 1 ¶¶1-2.  All the plaintiffs reside on the Reservation.  *Id.*  The three companies

---

[1]  For the motion to dismiss, the well-pled allegations in Western Sky's complaint are accepted as true.  *See Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993).

state in their loan agreements that: (1) the agreement is
subject to the exclusive laws of the Cheyenne River Sioux Tribe,
(2) the debtor consents to the exclusive jurisdiction of the
Cheyenne River Sioux Tribal Court, (3) the agreement is governed
by the Indian Commerce Clause of the U.S. Constitution and
Cheyenne River Sioux Tribe laws, and (4) the company is subject
to the laws of no state.  ECF No. 1 ¶11.

The Maryland Office of the CFR ("OCFR") is an executive
agency that enforces the Maryland Consumer Loan Law[2] ("MCLL") and
regulates those who lend money to Maryland residents.  Md. Code
Ann. State Gov't § 8-201; Bus. Reg. § 2-108; Office of the
Commissioner of Financial Regulation, http://www.dllr.state-
.md.us/finance/ (last visited Oct. 4, 2011).

On February 15, 2011, after investigating several
complaints about the plaintiff companies, the OCFR issued a
summary cease and desist order ("the order") to the three
companies and Martin Webb.  ECF No. 1 Ex. 1.  The order states
that, after investigating the plaintiffs' business activities in
Maryland, the OCFR concluded that the plaintiffs had engaged in
"usurious and unlicensed lending to Maryland customers in
violation of Maryland law."  *Id.* Ex. 1 at 2-3.  In addition to

---

[2] The MCLL prohibits making loans without an OCFR license and
lending money at an interest rate above the statutory maximum
annual rate.  Md. Code Ann. Fin. Inst. § 11-204; Com. Law § 12-
103(a).

requiring them to stop lending to Maryland residents, the order demanded that the plaintiffs provide the OCFR with records of all their loans to Maryland residents. *Id.* Ex. 1 at 24-26.  The order cited the laws and regulations that the OCFR had found the plaintiffs had violated, and included the OCFR's findings of fact, and notice that the plaintiffs were entitled to a hearing to contest the findings.[3]  *Id.* Ex. 1 at 27.

On March 18, 2011, the plaintiffs removed the OCFR proceeding to this Court.  No. 11-cv-0735-WDQ, ECF No. 1.  On May 10, 2011, the plaintiffs began this proceeding for

> declaratory relief declaring and holding that the Maryland Commissioner of Financial Regulation does not have any authority or power to prosecute his Summary Order to Cease and Desist and Order to Produce . . . against Plaintiffs because Plaintiffs are entitled to Tribal Immunity.

ECF No. 1.  They allege that the OCFR proceeding deprives them of a right secured by the Indian Commerce Clause of the U.S. Constitution and creates a claim under 42 U.S.C. § 1983 (2006). ECF No. 1 ¶11.  On October 12, 2011, this Court remanded the OCFR proceeding to the OCFR, holding that removal was improper

---

[3] The order noted that if the plaintiffs did not request a hearing, the OCFR could finalize the order, impose a "civil penalty up to $1,000 for a first violation and up to $5,000 for each subsequent violation," and "enter a final order declaring . . . that all consumer loan agreements entered into by the Respondents with Maryland consumers are illegal and unenforceable."  ECF No. 9 Ex. 3 at 27.

because the Court lacked subject matter jurisdiction over the
proceeding.  No. 11-cv-0735-WDQ, ECF No. 18.

II.  Discussion

The CFR contends that dismissal is proper because the Court
lacks subject matter jurisdiction over the claim, and if it has
jurisdiction, it should dismiss under the *Younger* doctrine or in
its discretion.  ECF No. 5 at 1.

A.  Standard of Review

Under Fed. R. Civ. P. 12(b)(1), an action may be dismissed
at any time for lack of subject matter jurisdiction.  The
district courts "have original jurisdiction of all civil actions
arising under the Constitution, laws, or treaties of the United
States."  28 U.S.C. § 1331.  This includes cases in which a
federal right or immunity is an essential element of the claim,
and a narrow class of cases in which "the subject matter of a
putative state law claim has been totally subsumed by federal
law—such that state law cannot even treat on the subject
matter."  *Lontz v. Tharp*, 413 F.3d 435, 439-40 (4th Cir. 2005).

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed
for failure to state a claim upon which relief can be granted.
Rule 12(b)(6) tests the legal sufficiency of a complaint, but
does not "resolve contests surrounding the facts, the merits of
a claim, or the applicability of defenses."  *Presley v. City of
Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).

4

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Midgal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009)(*quoting Twombly,* 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 1950. "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).

"[A] claim under the Declaratory Judgment Act, even if made, does not confer jurisdiction." *Interstate Petroleum Corp.*

v. *Morgan*, 249 F.3d 215, 221 n.7 (4th Cir. 2001) (*citing Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)). Therefore, the declaratory judgment plaintiff must establish federal jurisdiction by alleging either a federal claim against the defendant, or that there would be federal question jurisdiction over a claim the defendant could bring against the plaintiff. *Columbia Gas Transmission Corp. v. Drain*, 237 F.3d 366, 370 (4th Cir. 2001).[4]

    B.   Failure to State a Claim Under 42 U.S.C. § 1983

    Under 42 U.S.C. § 1983 there is a cause of action in law or equity for a person within the jurisdiction of the United States against

> [e]very person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> . . . subjects [the plaintiff] to the deprivation of
> any rights, privileges, or immunities secured by the
> Constitution and laws [of the United States].

"Indian treaty rights . . . are protected by the United States Constitution"; the deprivation of those rights under color of state law gives rise to a § 1983 claim. *Bowen v. Doyle*, 880 F.

---

[4] The lack of jurisdiction over the claim that the declaratory judgment defendant could have--or has--brought does not end the court's inquiry. *United States v. Penn. Dep't of Envtl. Res.*, 923 F.2d 1071, 1073 (3d Cir. 1991) (district court abused its discretion by dismissing declaratory judgment suit when the district court had original jurisdiction over the civil action commenced by the United States—although the district court had previously remanded the underlying dispute because it did not arise under federal law).

Supp. 99, 130 (W.D.N.Y. 1995).[5]   Although a tribe is not a "person" under § 1983 and may not bring a claim under the statute, a member of a tribe may bring a claim to redress a deprivation of his tribal treaty rights.   *Cnty. of Inyo v. Bishop Paiute Tribe*, 538 U.S. 701, 712 (2003).[6]   The plaintiff must identify a treaty, or federal statute, that enumerates the right of which the state has deprived him--common law rights are insufficient.[7]

---

[5] Bowen, president of the Seneca Nation, stated a § 1983 claim when he alleged deprivation of rights of self-government and exclusive jurisdiction over internal tribal affairs enumerated in the Seneca Nation Treaty of 1794.   Bowen sued to enjoin the New York Supreme Court from adjudicating a suit brought by his political opponents within the Seneca Nation, challenging the legitimacy of Bowen's government.   Bowen had succeeded in an earlier suit in the Seneca tribal court on the same issues. The district court held that the New York State court would have encroached on Treaty rights protected by the Constitution, by hearing the case.   An injunction was necessary to preserve the Seneca court's judgment and because state court adjudication would infringe on the tribe's right to self-governance.   *Bowen*, 880 F. Supp. at 130-31.

[6] Contrary to the OCFR's contention, *County of Inyo* does not state that "an individual asserting a claim under § 1983" is never entitled to tribal immunity.   *See* ECF No. 5 Ex. 1 at 8 (Defs' Mot. to Dismiss); *Cnty. of Inyo*, 538 U.S. at 712 ("[L]ike other private persons, [a member of the tribe] would have no right to immunity *from an appropriately executed search warrant based on probable cause*." (emphasis added)).

[7] *See Chase v. McMasters*, 573 F.2d 1011, 1017 (8th Cir. 1978) (A member of Three Affiliated Indian Tribes stated a § 1983 claim when she alleged that the state had violated her water rights under the Indian Organization Act, 25 U.S.C. § 465.); *Bowen*, 880 F. Supp. at 130-31 (Seneca Nation member stated § 1983 claim by alleging the deprivation of rights under Seneca Nation Treaty of 1794.).

The plaintiffs contend that they are "entitled under § 1983 to [a] Court determin[ation] whether they are immune from the state action initiated by the Commissioner." ECF No. 6 at 6. They rely on the Indian Commerce Clause of the United States Constitution, Art. I § 8 cl. 3, but that clause grants *Congress* power to regulate commerce with Native American Tribes; it does not grant immunity or provide exclusive tribal jurisdiction over commercial activity. *See Rice v. Rehner*, 463 U.S. 713, 718 (1983).[8] They have not identified a treaty or statute that grants them immunity.[9]

By failing to identify in their complaint a grant of immunity in a treaty or statute, the plaintiffs have failed to

---

[8] "Even on reservations, state laws may be applied unless such application would interfere with reservation self-government or would impair a right granted or reserved by federal law." *Rice*, 463 U.S. at 718; *cf. Idaho v. Native Wholesale Supply Co.*, No. 08-396, 2009 WL 940731 at *2-3 (D. Idaho, Apr. 6, 2009) (The Indian Commerce Clause does not express "Congress's intent to regulate the entire field of Native American commerce.").

[9] The plaintiffs allege that they are entitled to tribal immunity because:

> (a) Webb is an enrolled member of the Cheyenne River Sioux Tribe; (b) Webb's companies are operated solely on the Reservation; (c) the loan agreements at issue are subject solely to the exclusive laws and regula-tions of the Cheyenne River Sioux Tribe; (d) the borrowers have consented to the exclusive jurisdiction of the Cheyenne River Sioux Tribal Court; and (e) the loan agreements are governed by the Indian Commerce Clause of the United States Constitution and the laws of the Cheyenne River Sioux Tribe.

ECF No. 1 ¶11.

state a claim under 42 U.S.C. § 1983.  The Court will dismiss the complaint.

    C.   Jurisdiction Over the OCFR's Proceeding

    The Court does not have subject matter jurisdiction over the OCFR's proceeding.  *See Md. Comm'r of Fin. Regulation v. W. Sky Fin., LLC*, No. 11-0735, ECF No. 17 (Oct. 12, 2011).

    D.   Discretion to Dismiss

    The declaratory judgment plaintiffs have not established subject matter jurisdiction over the underlying dispute and have failed to state a claim under § 1983.  Accordingly, the Court need not determine whether, if it had jurisdiction, it should dismiss on the basis of the *Younger* doctrine or in the Court's discretion.

III. Conclusion

    For the reasons stated above, the CFR's motion to dismiss will be granted.


_____  
Date   10/13/11

                         _____  
                         William D. Quarles, Jr.  
                         United States District Judge