IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

WESTERN SKY FINANCIAL,  \*
LLC, et al.,            \*
                        \*
     Plaintiffs,        \*
                        \*
          v.            \*   CIVIL NO.: WDQ-11-1256
                        \*
MARYLAND COMMISSIONER OF \*
FINANCIAL REGULATION,   \*
                        \*
     Defendant.         \*
                        \*

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Western Sky Financial, LLC, Great Sky Finance, LLC, PayDay Financial, LLC, and Martin A. Webb ("plaintiffs"), sued the Maryland Commissioner of Financial Regulation ("CFR"), for declaratory relief. For the following reasons, the plaintiffs' motion for reconsideration will be denied; their motion for leave to file an amended complaint will be granted.

I.   Background[1]

Martin Webb, a member of the Cheyenne River Sioux Tribe who lives on the Cheyenne River Reservation, owns Western Sky Financial, LLC, Great Sky Finance, LLC, and PayDay Financial,

---

[1] A contested motion to amend pleadings that may be futile is treated as if the opposing party has moved to dismiss; the well-pled allegations in the proposed amended complaint are accepted as true. See United States ex. Rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008); Brockington v. Boykins, 637 F.3d 503, 505 (4th Cir. 2011).

LLC, internet-based loan companies. ECF No. 1 ¶¶1-2. All the plaintiffs live on the Reservation. *Id.* The three companies state in their loan agreements that: (1) the agreement is exclusively subject to the laws of the Cheyenne River Sioux Tribe, (2) the debtor consents to the exclusive jurisdiction of the Cheyenne River Sioux Tribal Court, (3) the agreement is governed by the Indian Commerce Clause of the U.S. Constitution and Cheyenne River Sioux Tribal laws, and (4) the company is subject to the laws of no state. ECF No. 1 ¶11.

The Maryland Office of the CFR ("OCFR") is an executive agency that enforces the Maryland Consumer Loan Law[2] ("MCLL") and regulates those who lend money to Maryland residents. Md. Code Ann. State Gov't § 8-201; Bus. Reg. § 2-108; Office of the Commissioner of Financial Regulation, http://www.dllr.state-.md.us/finance/ (last visited Oct. 4, 2011).

On February 15, 2011, after investigating several complaints about the plaintiff companies, the OCFR issued a summary cease and desist order ("the order") to the three companies and Martin Webb. ECF No. 1 Ex. 1. The order states that, after investigating the plaintiffs' business activities in Maryland, the OCFR concluded that the plaintiffs had engaged in "usurious and unlicensed lending to Maryland customers in

---

[2] The MCLL prohibits lending without an OCFR license and lending at an interest rate above the statutory maximum annual rate. Md. Code Ann. Fin. Inst. § 11-204; Com. Law § 12-103(a).

violation of Maryland law." *Id.* Ex. 1 at 2-3. In addition to requiring them to stop lending to Maryland residents, the order demanded that the plaintiffs provide the OCFR with records of all their loans to Maryland residents. *Id.* Ex. 1 at 24-26. The order cited the laws and regulations that the OCFR had found the plaintiffs had violated, and included the OCFR's findings of fact, and notice that the plaintiffs were entitled to a hearing to contest the findings.[3] *Id.* Ex. 1 at 27.

On March 18, 2011, the plaintiffs removed the OCFR proceeding to this Court. No. 11-cv-0735-WDQ, ECF No. 1. On May 10, 2011, the plaintiffs began this proceeding for

> declaratory relief declaring and holding that the Maryland Commissioner of Financial Regulation does not have any authority or power to prosecute his Summary Order to Cease and Desist and Order to Produce . . . against Plaintiffs because Plaintiffs are entitled to Tribal Immunity.

ECF No. 1. They alleged that the OCFR proceeding deprived them of a right secured by the Indian Commerce Clause and creates a claim under 42 U.S.C. § 1983 (2006). ECF No. 1 ¶11.

On October 12, 2011, this Court remanded the OCFR proceeding to the OCFR, holding that removal was improper

---

[3] The order noted that if the plaintiffs did not request a hearing, the OCFR could finalize the order, impose a "civil penalty up to $1,000 for a first violation and up to $5,000 for each subsequent violation," and "enter a final order declaring . . . that all consumer loan agreements entered into by the Respondents with Maryland consumers are illegal and unenforceable." ECF No. 9 Ex. 3 at 27.

because the Court lacked subject matter jurisdiction over the proceeding. No. 11-cv-0735-WDQ, ECF No. 18. It dismissed the complaint in this proceeding for failure to state a claim. ECF No. 10. The Court held that the plaintiffs had not identified a treaty or statute that granted them immunity, and accordingly had not stated a claim. ECF No. 10 at 6-9.

On October 27, 2011, the plaintiffs moved for reconsideration of the dismissal and leave to file an amended complaint. ECF Nos. 11, 12. The CFR opposed the motions. ECF Nos. 13, 14.

II. Discussion

    A.   The Plaintiffs' Motion for Reconsideration

        1.   Standard of Review

Motions for reconsideration of a final order are governed by Fed. R. Civ. P. 60(b). Under Rule 60(b), a court may grant relief from a judgment or order for: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or misconduct by the opposing party; (4) voidness; (5) satisfaction; or (6) any other reason that justifies relief. Fed. R. Civ. P. 60(b). Correction of a pleading defect is not a reason listed in Rule 60(b). When a request for reconsideration merely asks the court to "change its mind," relief is not authorized. *Pritchard v. Wal-Mart Stores, Inc.*, 3 F. App'x 52, 53 (4th Cir. 2001).

2.  Review of the Court's Dismissal Order

The plaintiffs seek review of the Court's order dismissing their complaint because they argue that they have now identified the treaty or federal statute that conferred rights needed to state a § 1983 claim. ECF No. 11 Attach. 1 at 1. Although curing a defect in the complaint may justify filing an amended complaint, it does not justify reconsideration. *Cf. Mitchell-El v. Elswick*, 225 F.3d 654 (Table), 2000 WL 1021265, *1 (4th Cir. 2000) (if the plaintiff could "save [an] action by merely amending his complaint," denial of reconsideration of dismissal is appropriate). The motion for reconsideration will be denied.

B.  The Plaintiffs' Motion to File an Amended Complaint

1.  Standard of Review

Under Fed. R. Civ. P. 15(a), the plaintiff may amend his complaint more than 21 days after a Fed. R. Civ. P. 12(b) motion only if the opposing party gives written consent, or the Court permits the amendment. The Court will allow amendment when justice requires,[4] but will not if the amendment would be prejudicial to the defendants or futile, or the movant has acted in bad faith with dilatory motive. *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010). The Court will determine futility under the standard of Fed. R. Civ. P.

---

[4] *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202-03 (3rd Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

12(b)(6).  *Adorno v. Crowley Towing & Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006).

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Midgal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001).  Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003).  These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557).  The complaint must

6

not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 1950. "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).

        2.   The Plaintiffs' Amended Complaint

The plaintiffs contend that they are "entitled to have this Court enforce their Tribal Immunity under 42 U.S.C. § 1983." ECF No. 12 Attach. 1 ¶13. Under § 1983, there is a cause of action in law or equity for a person within the jurisdiction of the United States against

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects [the plaintiff] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States].

"Indian treaty rights . . . are protected by the United States Constitution"; the deprivation of those rights under color of state law gives rise to a § 1983 claim. *Bowen v. Doyle*, 880 F. Supp. 99, 130 (W.D.N.Y. 1995), *aff'd*, 230 F.3d 525 (2d Cir. 2000).[5] Although a tribe is not a "person" under § 1983 and may

---

[5] Bowen, president of the Seneca Nation, stated a § 1983 claim when he alleged deprivation of rights of self-government and exclusive jurisdiction over internal tribal affairs enumerated in the Seneca Nation Treaty of 1794. Bowen sued to enjoin the New York Supreme Court from adjudicating a suit brought by his political opponents within the Seneca Nation, challenging the

not bring a claim under the statute, a member of a tribe may bring a claim to redress a deprivation of his tribal treaty rights. *Cnty. of Inyo v. Bishop Paiute Tribe*, 538 U.S. 701, 712 (2003). The plaintiff must identify a treaty, or federal statute, that enumerates the right of which the state has deprived him--common law rights are insufficient.[6] *See Rice v. Rehner*, 463 U.S. 713, 718 (1983).[7]

The plaintiffs contend that the Fort Laramie Treaty of 1868 and an Act of Congress enacted in 1889 grant them immunity, a right of which the CFR has deprived them. ECF No. 12 Attach. 1 ¶11.

---

legitimacy of Bowen's government. Bowen had succeeded in an earlier suit in the Seneca tribal court on the same issues. The district court held that the New York State court would have encroached on Treaty rights protected by the Constitution, by hearing the case. An injunction was necessary to preserve the Seneca court's judgment and because state court adjudication would infringe on the tribe's right to self-governance. *Bowen*, 880 F. Supp. at 130-31.

[6] *See Chase v. McMasters*, 573 F.2d 1011, 1017 (8th Cir. 1978) (A member of Three Affiliated Indian Tribes stated a § 1983 claim when she alleged that the state had violated her water rights under the Indian Organization Act, 25 U.S.C. § 465.); *Bowen*, 880 F. Supp. at 130-31 (Seneca Nation member stated § 1983 claim by alleging the deprivation of rights under Seneca Nation Treaty of 1794.).

[7] "Even on reservations, state laws may be applied unless such application would interfere with reservation self-government or would impair a right granted or reserved by federal law." *Rice*, 463 U.S. at 718.

The Fort Laramie Treaty, 15 Stat. 635, between the United States and the tribes of the Sioux Nation, "created the 'Great Reservation' for the Sioux and set off lands 'for the absolute and undisturbed use and occupation of the Indians.'" *Calhoon v. Sell*, 71 F. Supp. 2d 990, 999 (D.S.D. 1998) (*quoting* 15 Stat. 635).[8] Under the treaty, States may not "interfere with reservation self-government" or tax on-reservation activities. *Rice*, 463 U.S. at 718. This gives tribes the power to regulate "the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements," but only when the "non-Indians [are] on their reservations." *Id.* at 565.[9]

A member of a tribe may bring a claim to redress a deprivation of other tribal treaty rights,[10] but a company is not an enrolled member of an Indian Tribe simply because its owner

---

[8] The common-law doctrine of Indian sovereignty from state taxation for tribal members' on-reservation activities "provides a backdrop against which the applicable treaties and statutes must be read". *See United States v. South Dakota*, 105 F.3d 1552, 1556 (8th Cir. 1997).

[9] *See also Bowen*, 880 F. Supp. at 130 (Seneca Nation Treaty provided Seneca the right of exclusive jurisdiction over internal affairs). "Conversely, when Indians . . . act outside of their own Indian country . . ., they are subject to non-discriminatory state laws otherwise applicable to all citizens of the state." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1172 (10th Cir. 2012).

[10] *Cnty. of Inyo*, 538 U.S. at 712.

is a member.  *Baraga Prods., Inc. v. Comm'r of Revenue*, 156 F.3d 1228 (table), 1998 WL 449674, *2 (6th Cir. 1998).[11]  A sole proprietorship that is owned by a member of the tribe, located on a reservation, and doing business on the reservation is immune just as a member would be, because the sole proprietorship is not a legal entity, distinct from its owner. *Id.* at *3.  On the other hand, a corporation, which is "an entity distinct from its stockholders," is not a member of a tribe based on its owner's membership.  *Id.* at 2.

The plaintiff companies are limited liability companies. ECF No. 12 Attach. 1 ¶2.  Whether an LLC is a distinct legal entity from its owners depends on the law of the state under which it is organized.[12]  As the complaint does not identify the state under which the plaintiff companies are organized, the Court cannot conclude, at this stage, that the companies would

---

[11] Affirming 971 F. Supp. 294, 296 (W.D. Mich. 1997) ("[A]s a corporation, plaintiff is not actually an enrolled member of the Tribe. . . . [B]ecause a corporation is a legal fiction owing its existence to state law, [it] is also not the legal equivalent of a member of the Tribe. . . . [It cannot] be considered an enrolled member simply because its sole shareholder is a member of the Tribe.");  *Muscogee (Creek) Nation v. Henry*, No. 10-0019, 2010 WL 1078438, *3 (E.D. Okla. Mar. 18, 2010) (citing *Baraga*, 971 F. Supp. at 296; *Ariz. Dep't of Revenue v. Blaze Constr. Co.*, 526 U.S. 32, 34 (1999)).

[12] Compare *Guardian Life Ins. Co. of Am. v. Estate of Cerniglia*, 446 F. App'x 453, 455-56 (3rd Cir. 2011) (New Jersey law made clear that LLC's were distinct legal entities from their owners) with *Comensoli v. C.I.R.*, 422 F. App'x 412, 414 (6th Cir. 2011) (for federal tax purposes, LLC which opted out of separate entity status and its owner would be treated as one entity).

be subject to dismissal. Accordingly, the LLC plaintiffs need not be dismissed now.

The plaintiffs have stated a claim if making payday loans, on the internet, to Maryland residents, occurs "on . . . reservation," or "bears [a] clear relationship to tribal self-government or internal relations." *Montana v. United States*, 450 U.S. 544, 564-65 (1981). Internet advertising directed at, and internet sales to, non-Indians off the reservation, "occur[] beyond the reservation boundaries."[13] It is too early to determine whether the loans at issue in this case "occur[red] beyond the reservation boundaries"[14]--a factual question which discovery will be necessary to resolve. Accordingly, the

---

[13] *Philip Morris USA, Inc. v. King Mountain Tobacco Co., Inc.* 569 F.3d 932, 943 (9th Cir. 2009) ("passing off [palmed-off products] through worldwide Internet sales" to consumers outside the reservation was not on-reservation activity); *cf. ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712-13 (4th Cir. 2002) ("[T]he argument can . . . be made that the Internet's electronic signals are surrogates for the person and that internet users conceptually enter a State to the extent that they send their electronic signals into the State, establishing those minimum contacts sufficient to subject the sending person to personal jurisdiction in the State where the signals are received. . . . [A] State may . . . exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.").

[14] *Philip Morris*, 569 F.3d at 943.

proposed amended complaint would survive a motion to dismiss for failure to state a claim; amendment will be permitted.

        3.    The CFR's Immunity

The CFR alternatively argues that the plaintiffs cannot sue him because he is entitled to sovereign immunity under the Eleventh Amendment and is not a person under 42 U.S.C. § 1983. ECF No. 13 at 3.

The Eleventh Amendment does not bar suits against state regulatory commissioners for declaratory or injunctive relief from an ongoing violation of federal law. *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 525 U.S. 635, 645 (2002). The proposed amended complaint seeks only declaratory relief from ongoing regulation by the CFR. ECF No. 12 Attach. 1 at 6. Accordingly, the Eleventh Amendment would not require dismissal.

Similarly, § 1983 treats state officials sued in their official capacity for prospective relief as "persons." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). Accordingly, the amended complaint would not be subject to dismissal for failure to state a § 1983 claim based on the CFR's status as a state official. The plaintiffs will be permitted to file the amended complaint.

III. Conclusion

For the reasons stated above, the plaintiffs' motion for reconsideration will be denied; their motion for leave to file an amended complaint will be granted.

_____4/4/12_____          _____/s/_____
Date                           William D. Quarles, Jr.
                               United States District Judge