IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

WESTERN SKY FINANCIAL,           *
LLC, *et al.*,                     *

      Plaintiffs,               *

          v.                       *   CIVIL NO.: WDQ-11-1256

MARYLAND COMMISSIONER OF     *
FINANCIAL REGULATION,
                                  *
      Defendant.
                                  *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Western Sky Financial, LLC, Great Sky Finance, LLC, PayDay Financial, LLC, and Martin A. Webb ("plaintiffs"), sued the Maryland Commissioner of Financial Regulation ("CFR"), for declaratory relief. For the following reasons, the CFR's motion to dismiss the amended complaint will be granted.

I.     Background[1]

Martin Webb, a member of the Cheyenne River Sioux Tribe who lives on the Cheyenne River Reservation, owns Western Sky Financial, LLC, Great Sky Finance, LLC, and PayDay Financial, LLC, internet-based loan companies. ECF No. 18 ¶¶1-2. All the plaintiffs reside on the Reservation. *Id.* The three companies state in their loan agreements that: (1) the agreement is

---

[1] For the motion to dismiss, the well-pled allegations in the amended complaint are accepted as true. *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).

exclusively subject to the laws of the Cheyenne River Sioux Tribe, (2) the debtor consents to the exclusive jurisdiction of the Cheyenne River Sioux Tribal Court, (3) the agreement is governed by the Indian Commerce Clause of the U.S. Constitution and Cheyenne River Sioux Tribal laws, and (4) the company is subject to the laws of no state. ECF No. 18 ¶11.

The Maryland Office of the CFR ("OCFR") is an executive agency that enforces the Maryland Consumer Loan Law[2] ("MCLL") and regulates those who lend money to Maryland residents. Md. Code Ann. State Gov't § 8-201; Bus. Reg. § 2-108; Office of the Commissioner of Financial Regulation, http://www.dllr.state-.md.us/finance/ (last visited Oct. 4, 2011).

On February 15, 2011, after investigating several complaints about the plaintiff companies, the OCFR issued a summary cease and desist order ("the order") to the three companies and Martin Webb. ECF No. 1-2. The order states that, after investigating the plaintiffs' business activities in Maryland, the OCFR concluded that the plaintiffs had engaged in "usurious and unlicensed lending to Maryland customers in violation of Maryland law." Id. at 2-3.[3] In addition to

---

[2] The MCLL prohibits lending without an OCFR license and lending at an interest rate above the statutory maximum annual rate. Md. Code Ann. Fin. Inst. § 11-204; Com. Law § 12-103(a).

[3] Only licensed lenders may make loans in Maryland. Md. Code Ann., Fin. Inst. § 11-204(a)(1). The MCLL caps interest rates

2

requiring them to stop lending to Maryland residents, the order demanded records of all the plaintiffs' loans to Maryland residents. *Id.* at 24-26. The order cited the laws and regulations the OCFR had found the plaintiffs had violated, and included the OCFR's findings of fact, and notice that the plaintiffs were entitled to a hearing to contest the findings.[4] *Id.* at 27.

On March 18, 2011, the plaintiffs removed the OCFR proceeding to this Court. No. 11-cv-0735-WDQ, ECF No. 1. On May 10, 2011, the plaintiffs began this proceeding for

> declaratory relief declaring and holding that the Maryland Commissioner of Financial Regulation does not have any authority or power to prosecute his Summary Order to Cease and Desist and Order to Produce . . . against Plaintiffs because Plaintiffs are entitled to Tribal Immunity.

ECF No. 1. They alleged that the OCFR proceeding deprived them of a right secured by the Indian Commerce Clause. ECF No. 1 ¶¶11, 13.

On October 12, 2011, this Court remanded the OCFR proceeding to the OCFR, holding that removal was improper

---

at 1.35 to 2.75 per cent, depending on the original and unpaid principal balances. Md. Code Ann., Comm. Law § 12-306.

[4] The order noted that if the plaintiffs did not request a hearing, the OCFR could finalize the order, impose a "civil penalty up to $1,000 for a first violation and up to $5,000 for each subsequent violation," and "enter a final order declaring . . . that all consumer loan agreements entered into by the Respondents with Maryland consumers are illegal and unenforceable." ECF No. 9 Ex. 3 at 27.

because the Court lacked subject matter jurisdiction over the proceeding. No. 11-cv-0735-WDQ, ECF No. 18. It dismissed the original complaint in this proceeding for failure to state a claim, because the plaintiffs had not identified a treaty or statute that granted them immunity, and accordingly had not stated a claim. ECF No. 10 at 6-9.

On April 4, 2012, the Court granted the plaintiffs' contested motion to file an amended complaint.[5] ECF No. 18. The new complaint alleges deprivations of rights guaranteed by the Fort Laramie Treaty of 1868 (15 Stat. 635) and an Act of Congress enacted in 1889 (25 Stat. 888), and seeks relief under 42 U.S.C. § 1983 (2006). *Id.* ¶11. On April 24, 2012, the CFR moved to dismiss the amended complaint for lack of subject matter jurisdiction, failure to state a claim, *Younger* abstention, and in its discretion to decline to hear a declaratory judgment action. ECF 20-2 at 2. The plaintiffs opposed the motion. ECF No. 21.

II. Analysis

The CFR contends that the plaintiffs' lending activities constitute off-reservation conduct, and therefore the Court should dismiss for failure to state a claim and lack of subject matter jurisdiction. ECF No. 20-2 at 2-4.

---

[5] The plaintiffs moved to file the amended complaint on October 27, 2011; the amended complaint was filed on April 9, 2012. ECF Nos. 12, 19.

A.   Standards of Review

Under Fed. R. Civ. P. 12(b)(1), the Court must dismiss an action at any time it discovers it lacks subject matter jurisdiction.  The plaintiff has the burden of proving the Court has jurisdiction, and the Court must make all reasonable inferences in the plaintiff's favor.  *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004).  The Court may "look beyond the pleadings" to decide whether it has subject matter jurisdiction, but it must presume that the factual allegations in the complaint are true.  *Id.*

"[A] claim under the Declaratory Judgment Act, even if made, does not confer jurisdiction."  *Interstate Petroleum Corp. v. Morgan*, 249 F.3d 215, 221 n.7 (4th Cir. 2001) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)).  The declaratory judgment plaintiff must establish federal jurisdiction by alleging either a federal claim against the defendant, or that there would be federal question jurisdiction over a claim the defendant could bring against the plaintiff.  *Columbia Gas Transmission Corp. v. Drain*, 237 F.3d 366, 370 (4th Cir. 2001).[6]

---

[6] Lack of jurisdiction over the claim that the declaratory judgment defendant could have--or has--brought does not end the court's inquiry.  *United States v. Penn. Dep't of Envtl. Res.*, 923 F.2d 1071, 1073 (3d Cir. 1991) (district court abused its discretion by dismissing declaratory judgment suit when the district court had original jurisdiction over the civil action

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)(quoting *Twombly*, 550 U.S. at 557). The complaint must

---

commenced by the United States—although the district court had previously remanded the underlying dispute because it did not arise under federal law).

not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 1950. "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).

B.   Subject Matter Jurisdiction

The district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under 42 U.S.C. § 1983 there is a cause of action in law or equity for a person within the jurisdiction of the United States against

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects [the plaintiff] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States].

"Indian treaty rights . . . are protected by the United States Constitution"; the deprivation of those rights under color of state law gives rise to a § 1983 claim. *Bowen v. Doyle*, 880 F. Supp. 99, 130 (W.D.N.Y. 1995), *aff'd*, 230 F.3d 525 (2d Cir. 2000). The statutory requirements of § 1983 are elements of a plaintiff's claim, not jurisdictional pre-requisites to bringing an action in federal court.[7]

---

[7] *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006) (discussing "the distinction between two sometimes confused or conflated

The plaintiffs brought this action under 42 U.S.C. § 1983, alleging that the CFR deprived them of their immunity from state regulation of activities conducted on Indian reservations, secured by the laws of the United States. ECF No. 19 ¶¶ 4, 11. The CFR contends that the Court lacks subject matter jurisdiction over the plaintiffs' suit because the loans were not made on the reservation. ECF No. 20-2 at 6. In support, the CFR has submitted several opinions from state and federal courts considering state actions against Webb and his companies for violations of state lending laws, in which the courts have stated that the Webb's companies conducted the lending business off-reservation and were, therefore, not protected by reservation immunity. ECF Nos. 20-3, 20-4, 20-5, 20-6.

The CFR's asserted facts may undermine the merits of the claim, but they do not deprive the Court of jurisdiction to determine whether, under 42 U.S.C. § 1983, the CFR deprived the plaintiffs of immunity secured by the laws of the United States. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006).[8]

---

concepts: federal-court subject matter jurisdiction over a controversy; and the essential ingredients of a federal claim for relief," and holding that a statutory requirement limits a Court's subject matter jurisdiction only if "the Legislature clearly states" that it is jurisdictional).

[8] For the same reason, the CFR's assertion that the plaintiff businesses are not entitled to tribal immunity, ECF No. 20-2 at 7, is irrelevant to the Court's subject matter jurisdiction; it instead challenges the merits of the claim.

C.  Failure to State a Claim

The CFR's argument that the complaint fails to state a claim relies on the same cases. ECF No. 20-2 at 6. Those cases, however, accepted as true allegations by the state plaintiffs which alleged that Webb's companies: (1) advertised on the internet and television in the states, (2) withdrew funds from banks in the states, not the reservations, and (3) garnished wages from employers in the states.[9] The complaint here contains no such allegations. *See* ECF No. 19. The Court would have to look beyond the complaint to find that the plaintiffs' lending activities were outside the reservation. Rule 12(b)(6) does not test the accuracy of the complaint; only its sufficiency. *Presley*, 464 F.3d at 483. In determining this motion under Rule 12(b)(6), the Court will not rely on facts not alleged in the complaint. *Id.*

D.  Abstention

Next, the CFR asks the Court to dismiss the action to avoid interfering with the state proceeding, based on the principles in *Younger v. Harris*, 401 U.S. 37 (1971). ECF No. 20-2 at 8-9.

---

[9] ECF No. 20-3 at 4, *Colorado v. W. Sky Fin.*, No. 11-0887 (D. Colo. Dec. 27, 2011); ECF No. 20-4 at 8, *Colorado ex rel. Suthers v. W. Sky Fin.*, No. 11-0638 (Dist. Ct., Denver Cnty., Colo. Apr. 17, 2012); ECF No. 20-5 at 2-3, *Missouri v. Webb*, No. 11-1237 (E.D. Mo. Mar. 27, 2012).

The *Younger*[10] abstention doctrine does not permit[11] a federal court to exercise its jurisdiction over an action which asks it to interfere in state proceedings when: (1) there are ongoing state proceedings including coercive administrative proceedings,[12] which (2) implicate important state interests, and (3) the federal plaintiff will have an adequate opportunity to raise federal claims in the state proceedings. *Moore v. City of Asheville*, 396 F.3d 385, 390 (4th Cir. 2005) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

---

[10] In *Younger*, the plaintiff filed a federal action after he was indicted under a California Syndicalism Act, but before he was tried. 401 U.S. at 38-39. He sought to enjoin the state criminal action because, he alleged, it violated his First Amendment rights. *Id.* The Supreme Court announced that notions of "comity, that is, a proper respect for state functions," and federalism, required federal courts to refrain "from interfering with [state] criminal prosecutions." *Id.* at 44.

[11] "*Younger* is not merely a principle of abstention; rather, the case sets forth a mandatory rule of equitable restraint, requiring the dismissal of a federal action that seeks to enjoin an ongoing [state action]." *Nivens v. Gilchrist*, 444 F.3d 237, 247 (4th Cir. 2006) (quoting *Juluke v. Hodel*, 811 F.2d 1553, 1556 (D.C. Cir. 1987)).

[12] A "defendant to a coercive state administrative proceeding must exhaust his state administrative and judicial remedies [by seeking all available state judicial review,] and may not bypass them in favor of a federal court proceeding in which he seeks effectively to annul the results of a state administrative body." *Moore v. City of Asheville*, 396 F.3d 385, 388 (4th Cir. 2005) (internal quotation marks omitted).

1.   State Proceeding

A coercive proceeding is a state-initiated enforcement action.[13] The OCFR's enforcement action qualifies, because it is an administrative enforcement action which is judicial in nature. *See Ward v. Simpers*, No. 07-3266-RDB, 2008 WL 2271486, **4-5 (D. Md. May 29, 2008).[14] *Moore*, 396 F.3d at 390.

2.   Important State Interest

The *Younger* doctrine also considers "the importance of the generic proceedings to the State"--in determining whether to hear a claim seeking injunction of a criminal trial, the Court does not consider a state's interest in prohibiting particular conduct, but its interest in "carrying out the important and necessary task of enforcing its criminal laws." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 365

---

[13] *See Dukes v. Maryland*, No. 11-0876-CCB, 2011 WL 4500885, *4 (D. Md. Sept. 27, 2011) (*citing Brown v. Day*, 555 F.3d 882, 891 (10th Cir. 2009), *Devlin v. Kalm*, 594 F.3d 893, 895 (6th Cir. 2010)) (distinguishing between remedial and coercive proceedings; noting that the state generally initiates a coercive proceeding and requires the federal plaintiff's participation; the federal plaintiff seeks to correct a wrong in that state proceeding; and the federal plaintiff committed some alleged bad act, which precipitated the state proceeding).

[14] Maryland Department of Labor, Licensing, and Regulation administrative proceedings in Maryland Office of Administrative Hearings was within the *Younger* doctrine because the actions "require adversarial, trial-like hearings," and the proceedings "'investigate, declare, and enforce liabilities as they stand on present or past facts and under law supposed already to exist.'" *Ward*, 2008 WL 2271486, **4-5 (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 370-371 (1989)); *see also Dukes*, 2011 WL 4500885, *4.

(1989) ("*NOPSI*").  Here, the Court must consider Maryland's interest in regulating those who lend money to Maryland residents.  *See id.*  Maryland has a substantial, important interest in enforcing statutes that "protect the public by providing uniform licensing requirements" for lenders in consumer transactions.  *Ward*, 2008 WL 2271486, *5 (discussing Maryland Mortgage Lenders and Real Estate Brokers Laws).[15]  The CFR's enforcement of lending laws is within this interest.  *See Moore*, 396 F.3d at 390.

Western Sky contends that when "issues of Tribal immunity are present, the state-interest prong of *Younger* cannot be met." ECF No. 6 at 11.

> When there is an overwhelming federal interest--an interest that is as much a core attribute of the national government as the list of important state interests are attributes of state sovereignty in our constitutional tradition--no state interest, for abstention purposes, can be nearly as strong at the same time.

*Harper v. Pub. Serv. Comm'n of W. Va.*, 396 F.3d 348, 356 (4th Cir. 2005).  A state's interest in impeding interstate commerce to protect resident businesses is necessarily weaker than--and displaced by--the federal interest in regulating interstate

---

[15] *Cf. Williams v. Lubin*, 516 F. Supp. 2d 535, 539 (D. Md. 2007) ("There can be no question" that Maryland has an important interest in "protecting consumers and investors and maintaining a reliable market for the exchange of securities. . . . The ability of the Commissioner to stop violations quickly is [also] important.").

commerce. *Id.* Similarly, state interests in regulating activities on reservations are made insignificant by the Indian Commerce Clause. *Id.* at 357 n.3.[16]

Maryland's interest in protecting its citizens from predatory loans made in Maryland, not on reservations, does not "by its very nature" conflict with an "overwhelming federal interest." *Harper*, 396 F.3d at 355-56. The CFR's proceeding also does not charge the tribe with wrongdoing, or tax the tribe, as in the cases discussed in *Harper*.[17] Finally, the conduct is not unquestionably limited to the reservation,[18] or commerce between tribes.[19] Accordingly, *Harper* counsels abstention.

### 3. Opportunity to Present Federal Claims

Finally under *Younger*, the "[p]laintiffs bear the burden of showing inadequacy or unavailability." *Williams v. Lubin*, 516 F. Supp. 2d 535, 539 (D. Md. 2007). The plaintiffs contend that

---

[16] Citing *Seneca-Cayuga Tribe v. State ex rel. Thompson*, 874 F.2d 709, 713 (10th Cir. 1989) (finding state interest in regulating bingo games on reservation land did not justify *Younger* abstention because of paramount federal interest embodied by the Indian Commerce Clause); *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1205 (10th Cir. 2003) (finding state interest in taxing sales between tribes did not justify *Younger* abstention because of the federal interest in protecting tribal sovereign immunity).

[17] *Harper*, 396 F.3d at 357 n.3.

[18] *Seneca-Cayuga*, 874 F.2d at 713.

[19] *Winnebago*, 341 F.3d at 1205.

they will not be able to raise the federal question in the administrative proceeding because the CFR "has already prejudged the matter" and decided that the plaintiffs are not entitled to immunity. ECF No. 6 at 12-13.

The plaintiffs have an adequate opportunity to present their constitutional concerns if "constitutional claims may be raised in state-court judicial review of the administrative proceeding." *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 629 (1986). Maryland permits a reviewing state court to reverse or modify an administrative decision if a finding, conclusion, or decision is unconstitutional. Md. Code Ann., State Gov't § 10-222(h)(3).[20] The availability of judicial review renders the plaintiffs' "preju-d[ice]" concern unpersuasive. *See Ohio Civil Rights Comm'n*, 477 U.S. at 629. The third factor is satisfied.

    4.   Conclusion

All the *Younger* considerations counsel abstention. Accordingly, the Court will abstain from interfering in Maryland's enforcement of its lending laws.

---

[20] *See also Ward*, 2008 WL 2271486, *6 (finding that § 10-222(h) affords an adequate opportunity to present constitutional claims and noting that "Maryland State courts have routinely been asked to decide constitutional challenges" on vagueness grounds).

14

III. Conclusion

For the reasons stated above, the CFR's motion to dismiss the amended complaint will be granted.

_7/27/12_
Date

_/s/ William D. Quarles, Jr._
William D. Quarles, Jr.
United States District Judge